IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **OLD REPUBLIC GENERAL INSURANCE CORPORATION** | * | |
| 307 North Michigan Ave. | * | |
| Chicago, Illinois 60601 | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.:** |
| | * | |
| **JOHN C. GRIMBERG COMPANY, INC.** | | |
| 3200 Tower Oaks Blvd., Suite 300 | * | |
| Rockville, MD 20852 | | |
| | * | |
| **Serve on: Resident Agent** | | |
| The Corporate Trust, Inc. | * | |
| 2405 York Road, Suite 201 | | |
| Lutherville-Timonium, MD 21093-2264 | * | |
| | | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**PLAINTIFF OLD REPUBLIC GENERAL INSURANCE CORPORATION'S
COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Old Republic General Insurance Corporation ("Old Republic"), by and through

its attorneys Thomas V. McCarron, Zachary D. Schlein, and Semmes, Bowen & Semmes, hereby

brings this Complaint for Declaratory Judgment, and as grounds, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Old Republic is an insurance company incorporated under the laws of the State of

Illinois with its principal place of business in Chicago, Illinois.

2.      Defendant John C. Grimberg Company, Inc. (hereinafter "Grimberg") is a general

contracting firm incorporated under the laws of the State of Maryland with its principal place of

business in Rockville, Maryland.

1

3.      This Complaint for Declaratory Judgment is initiated pursuant to Rule 57 and the Federal Declaratory Judgment Act, codified at 28 U.S.C. Sections 2201 and 2202, to obtain a declaration of Old Republic's rights and obligations under certain policy(ies) of insurance issued by Old Republic to Grimberg.

4.      This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a) because it is a civil action between residents and citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant Grimberg has its principal place of business within the District of Maryland, and is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### The Project

6.      On or about November 20, 2017, the Department of the Navy ("the Navy") awarded Grimberg a Contract ("the Contract") for the construction of a Middle School/High School at Marine Corps Base Quantico in Quantico, VA ("the Project"). Construction of the Project is ongoing, and the work of Grimberg and its subcontractors remains incomplete.

7.      During Grimberg's performance of the Contract, the Navy identified various issues it had with Grimberg's work, including, allegedly, defects in Project construction, poor quality control management, and resulting delays to the Project.

a.      On October 29, 2019, the Navy's design firm, EwingCole, conducted a structural inspection of the Project and subsequently issued a Report dated November 11, 2019, identifying allegedly defective conditions and/or conditions that did not comply with the plans and specifications for the Project. These included but were not limited to:

1.  Misaligned bolt holes;

2.  Wall pipe penetrations located too close to a beam pocket;

3.  Missing depressions in slab for showers;

4.  Multiple beam to column shear tab connections with improperly slotted holes;

5.  Insufficiently pretensioned bolts to achieve slip critical connection requirements;

6.  Poor consolidation at many insulated concrete formwork wall haunches;

7.  Debris located inside wall pours;

8.  Missing wedge anchors for support of brick shelves; and

9.  Cracking on floor slab.

b.      On May 22, 2020, the Navy issued a Cure Notice to Grimberg, advising that a majority of the items identified in the November 11, 2019 EwingCole report remained outstanding, and that "[o]verall Quality Control and installation of the structural steel for the facility is seriously deficient and is not installed per contract."

c.      On June 19, 2020, EwingCole conducted another structural site assessment of the Project. Although it assessed most (but not all) of the defective conditions previously identified in its November 11, 2019 report to be resolved, EwingCole observed new "serious structural issues" it believed could pose "immediate safety concerns," warranting "immediate action" to "determine the full extent of the issues and to prevent additional issues from being created." The new structural issues observed included:

1. Embedded plates for steel beams that were not properly located within the concrete bearing wall;

2. Steel beams cut short with modified connections (unapproved) to accommodate improperly located embedded steel connection plates;

3. Concrete bearing walls constructed at an incorrect location and (possibly) with incorrect top of wall elevation;

4. Beam bearing pockets placed too low;

5. Stairs and railings constructed without approval of shop drawings;

6. Welds below industry standard;

7. Unapproved modifications to metal deck support plates between joist seats;

8. Missing wall bracing beam(s);

9. Misaligned roof beam connection(s); and

10. Missing bracing on masonry walls.

d. On June 26, 2020, as a result of the issues identified during EwingCole's June 19, 2020 structural site visit, the Navy ordered the suspension of all work under the Contract.

e. On July 24, 2020, the Navy issued a Second Cure Notice to Grimberg, outlining unresolved issues identified in the Navy's first Cure Notice issued May 22, 2020, and in EwingCole's 2019 and 2020 inspections.

8. Approximately one year later on or about July 28, 2021, after the effective completion of the Project's foundations and insulated concrete framework walls, and as a result

of the Navy's issues with the Contract work, the Navy demanded that Grimberg demolish and

replace all of the insulated concrete formwork walls for the Project.

*The Old Republic Policy*

9.      Old Republic issued to Grimberg a commercial general liability insurance policy,

No. A-3CG-926618-10 (hereinafter "the Policy"), effective October 1, 2019 through October 1,

2020, with limits of $1 million per each occurrence with a $2 million general aggregate and $2

million products-completed operations aggregate. The Policy, with premium information

redacted, is attached hereto as **Exhibit 1**.

10.      The Policy includes Commercial General Liability Coverage Form CG 00 01 04

13, amended by the Amendment of Insurance Agreement Prior Damage or Injury endorsement

number CG EN GN 0083 12 08, which replaces the Insuring Agreement. In relevant part, the

Old Republic Policy, as amended, includes the following policy language:

> *SECTION I COVERAGES*
> *COVERAGE A – BODILY INJURY AND PROPERTY*
> *DAMAGE LIABILITY*
>
> *Paragraph 1. Insuring Agreement of Section I – Coverage A-*
> *Bodily Injury And Property Damage Liability is replaced by the*
> *following:*
>
> *1.      Insuring Agreement*
>
> > *a.      We will pay those sums that the insured becomes legally*
> > *obligated to pay as damages because of "bodily injury"*
> > *and "property damage' to which this insurance applies. We*
> > *will have the right and duty to defend the insured against*
> > *any "suit" seeking those damages. However, we will have*
> > *no duty to defend the insured against any "suit" seeking*
> > *damages for "bodily injury" or "property damage" to*
> > *which this insurance does not apply. . . .*
> >
> > *No other obligation or liability to pay sums or perform acts*
> > *or services is covered unless explicitly provided for under*
> > *Supplementary Payments – Coverages A and B.*

**b.**   *This insurance applies to "bodily injury" and "property damage" only if:*

> **(1)**   *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

> **(2)**   *The "bodily injury" or "property damage" first takes place during the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place.*

* * *

**2.**   **Exclusions**

*This insurance does not apply to:*

**a.**   **Expected Or Intended Injury[1]**

*Bodily Injury or property damage expected or intended from the standpoint of the insured.  This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.*

* * *

**j.**   **Damage To Property**

*"Property damage" to:*

> **(1)**   *Property you own, rent, or occupy, including any costs or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

> **(2)**   *Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

---

[1] As amended by Endorsement CG EN GN 0054 09 06: Extend Expected and Intended to Property Damage.

*(3)      Property loaned to you;*

*(4)      Personal property in the care, custody or control of the insured;*

*(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

*Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.*

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

* * *

**m.      Damage To Impaired Property Or Property Not Physically Injured**

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

*(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

7

> **(2)**     *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*
>
> *This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

* * *

### *SECTION V – DEFINITIONS*

* * *

**13.**     *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.*

* * *

**17.**     *"Property damage" means:*

**a.**     *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

**b.**     *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

* * *

**18.**     *"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:*

**a.**     *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*

**b.**     *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

8

**Exhibit 1.**

11.     The Policy further includes two endorsements - CG 22 79 04 13 (Exclusion - Contractor's Professional Liability) and CG 22 34 04 13 (Exclusion – Construction Management Errors and Omissions), which exclude the following from coverage under the Policy:

> *EXCLUSION – CONTRACTORS –*
> *PROFESSIONAL LIABILITY*
>
> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> *The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B –Personal And Advertising Injury Liability**:*
>
> **1.**     *This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:*
>
> > **a.**  *Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and*
> >
> > **b.**  *Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.*
> >
> > *This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.*

9

**2.** *Subject to Paragraph **3.** below, professional services include: a.Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and b.Supervisory or inspection activities performed as part of any related architectural or engineering activities.*

**3.** *Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.*

\* \* \*

*EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I –Coverage B – Personal And Advertising Injury Liability**:*

*This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:*

**1.** *The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or*

**2.** *Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.*

*This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that*

> *insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph 1. or 2.*
>
> *This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.*

### *Tender by Grimberg*

12.     On or about July 22, 2020, Old Republic received an ACORD General Liability Notice of Claim on behalf of Grimberg, describing Grimberg's claim as follows:

> Insured submitting claim for several issues regarding the Quantico School project; defective work/negligence performed by subcontractors that resulted in damage to the project that may require rework, removal/replacement of work performed by others and delay damages asserted by subcontractors and the Navy.

13.     On October 20, 2020, Old Republic issued a Coverage Disclaimer to Grimberg, outlining in detail reasons that no coverage exists for Grimberg's claim under the Policy and reserving its right to enforce any and all provisions of the Policy.

14.     On September 13, 2021, almost one year after Old Republic's denial of coverage, Grimberg responded to Old Republic's October 20, 2020 Coverage Disclaimer with a request for reconsideration of Old Republic's coverage decision, apparently prompted by the Navy's July 28, 2021 directive that Grimberg demolish and reconstruct all insulated concrete formwork walls for the Project.

15.     Indeed, on or about September 22, 2021, Grimberg provided Old Republic with a second formal tender describing its claim as follows:

> This will serve as formal notice of claim to Old Republic General Insurance in connection with the captioned matter. The Navy has demanded that John C. Grimberg Company demolish the walls in connection with the captioned project. In a July 28, 2021 meeting, the Navy provided written direction to John C. Grimberg Company

to demolish and replace all of the ICF walls in the building. On August 19, 2021, the Navy reiterated this instruction.

16.     On October 18, 2021, Old Republic issued a second Coverage Disclaimer to Grimberg, outlining again reasons that no coverage exists for Grimberg's claim under the Policy and reserving its right to enforce any and all provisions of the Policy.

## COUNT I – DECLARATORY JUDGMENT

17.     Old Republic incorporates the paragraphs above as though fully set forth herein.

18.     Old Republic contends that no coverage exists for Grimberg under the Policy. Presumably, Grimberg contends that there is coverage, based on its tenders of coverage to Old Republic.  There is thus an actual controversy between the parties.

19.     Specifically, Old Republic contends that there is no coverage with respect to damages arising from Grimberg's performance of the Contract, and specifically, with respect to the defects in Project construction, poor quality control management, and resulting Project delays alleged by the Navy, Grimberg, and/or Grimberg's subcontractor(s).

20.     Furthermore, because no "suit" has been instituted against Grimberg seeking damages to which the Policy applies, Old Republic has no duty to defend Grimberg at this time.

21.     Old Republic contends that there is no coverage under the Policy because the Navy, Grimberg, and/or Grimberg's subcontractors do not allege any "property damage" within the meaning of the Policy, and/or do not allege any loss because of "property damage" as defined in the Policy.

22.     Old Republic also contends that there is no coverage under the Policy for any damages claimed for the repair or replacement of work performed by or on behalf of Grimberg, because such damages are not "property damage" under the Policy.

23.     Old Republic contends that there is no coverage under the Policy because the conduct alleged by the Navy, Grimberg, and/or Grimberg's subcontractors is not an "Occurrence" under the Policy.

24.     Old Republic also contends that there is no coverage under the Policy because correcting defective work and the costs associated with doing so are not damages caused by an "Occurrence."

25.     Old Republic contends that the Policy Exclusions for Contractor's Professional Liability and Construction Management Errors and Omissions exclude coverage for professional liability and quality control services provided by or for Grimberg.

26.     Old Republic contends that the Damage to Property Exclusion (Exclusion j) excludes coverage for any damage to property arising out of Grimberg's work or anyone working on Grimberg's behalf.

27.     Old Republic contends that the Damage to Impaired Property or Property Not Physically Injured Exclusion (Exclusion m) excludes coverage for damages arising out of Grimberg's failure to comply with the Contract and any delay damages.

28.     Old Republic contends that the Contractual Liability Exclusion (Exclusion b) excludes coverage for economic damages arising out of Grimberg's construction contract(s).

WHEREFORE, Plaintiff Old Republic prays that this Honorable Court:

(A)     Enter judgment in Old Republic's favor and against Grimberg;

(B)     Declare, adjudicate, and enter by judgment that no coverage exists under the Policy for any of the claims or damages alleged with respect to Grimberg's performance of the Contract;

(C)     Declare, adjudicate, and enter by judgment that Old Republic does not owe to

Grimberg a duty to defend or to indemnify for any damages or other relief sought

with regard to Grimberg's performance of the Contract;

(D)     Declare, adjudicate, and enter by judgment that Old Republic is entitled to recover

from Grimberg its costs, including reasonable attorneys' fees as allowed by law;

and

(E)     Provide such other and further relief that this Court deem just and proper.

Respectfully submitted,

/s/
Thomas V. McCarron (Fed. Bar No. 08145)
**Semmes, Bowen & Semmes**
25 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Telephone: (410) 576-4854
Facsimile: (410) 539-5223
tmccarron@semmes.com

/s/
Zachary D. Schlein (Fed. Bar No. 14085)
**Semmes, Bowen & Semmes**
25 South Charles Street, Suite 1400
Baltimore, Maryland 21201
Telephone:  (410) 576-4706
Facsimile: (410) 539-5223
zschlein@semmes.com

*Counsel for Plaintiff Old Republic*

B2708736.DOCX

14